IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DESERT ROCK ENERGY COMPANY, LLC )<br>THREE RIVERWAY )<br>SUITE 1100 )<br>HOUSTON, TEXAS 77056 )<br> )<br>AND )<br> )<br>THE DINÉ POWER AUTHORITY )<br>MORGAN BLVD. )<br>POST OFFICE BOX 3239 )<br>WINDOW ROCK, ARIZONA 86515 )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>U.S. ENVIRONMENTAL PROTECTION )<br>AGENCY )<br>1200 PENNSYLVANIA AVENUE, N.W. )<br>WASHINGTON, DC  20004 )<br> )<br>AND )<br> )<br>STEPHEN L. JOHNSON, ADMINISTRATOR, )<br>U.S. ENVIRONMENTAL PROTECTION )<br>AGENCY )<br>1200 PENNSYLVANIA AVENUE, N.W. )<br>WASHINGTON, DC  20004 )<br> )<br>Defendants. )<br>_____ ) | CIVIL ACTION NO. _____ |

## **ORIGINAL COMPLAINT**

Plaintiffs, Desert Rock Energy Company, LLC (the "Company") and the Diné Power

Authority ("DPA"), by and through their attorneys, file this complaint against the United States

Environmental Protection Agency ("EPA") and Stephen L. Johnson, Administrator of the United

States Environmental Protection Agency (the "Administrator") (collectively, "Defendants" or "EPA") and allege and say as follows:

## I. NATURE OF THE ACTION

1.      This is a citizen suit to enforce the Clean Air Act ("CAA" or "the Act"), brought under section 304(a) of the CAA, 42 U.S.C. § 7604(a), against the Defendants for their failure to perform a mandatory duty required by the Act.

2.      The Navajo Nation (the "Nation"), working through DPA, has been seeking to improve the economic well-being of the Nation and its people by developing energy resources within its borders. In 2003, DPA approached the owners of the Company to propose and initiate the development, on tribal land, of a new power plant that would be operated primarily by Navajo workers and would be powered by coal owned by the Nation and mined on tribal land.

3.      Since 2003, DPA and the Company (or its predecessors) have been working with EPA to secure the necessary approvals to construct a state-of-the-art 1500 megawatt coal-fired power plant, known as the Desert Rock Energy Project (the "Project").

4.      Under the Act, construction on the Project cannot even begin until EPA issues an air permit, known as a "Prevention of Significant Deterioration" ("PSD") permit, to ensure, among other things, that the Project will not violate any air quality standards and will have the "best available control technology" to control certain air emissions. 42 U.S.C. §§ 7470-7492.

5.      The permit conditions already accepted by the Company include the most stringent emission limits of any coal-fired power plant in the country. EPA has publicly stated that these limits will "set a new level of performance for coal-fired plants in the United States." Detailed technical studies submitted to EPA demonstrate that the Project will not violate any air quality standards and that the proposed emission limits will safeguard public health and the environment.

6. The initial permit application for the Project was submitted to EPA in February 2004, and EPA notified the permit applicant by letter dated May 21, 2004, that the permit application was complete.

7. Under Section 165(c) of the CAA, 42 U.S.C. § 7475(c), EPA is required to take final action on a PSD permit within one year of receiving a complete application. By law, Defendants should have issued the PSD permit for the project no later than May 21, 2005.

8. Despite repeated requests from DPA and the Company, Defendants have disregarded and continue to disregard their statutory duty to act on the permit application.

9. Defendants' failure to comply with their mandatory duty has had, and will continue to have, substantial adverse social and economic impacts on the Nation, which loses approximately $5 million in direct government revenue every month the Project is delayed (an amount equal to about 30 percent of the Nation's budget), and on the Company, which has already invested more than $20 million in the Project but does not yet have a permit that, by law, it should have received almost three years ago.

## II. **THE PARTIES**

10. Defendants are the United States Environmental Protection Agency and Stephen L. Johnson, Administrator of the United States Environmental Protection Agency. Both are located and have their principal place of business at 1200 Pennsylvania Avenue N.W., Washington, DC 20004. Pursuant to Federal Rule of Civil Procedure 4(i) and 42 U.S.C. § 7604(c)(3), EPA may be served with process by delivering a copy of the summons and complaint via registered or certified mail to the United States attorney for the district in which this action is brought, to the Attorney General of the United States, and to the EPA Administrator.

11.     Desert Rock Energy Company, LLC is the developer of the Desert Rock Energy Project. The Company is an indirect wholly-owned subsidiary of Sithe Global Power, LLC and is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e). The Company is located and does its principal business in Houston, Texas.

12.     The Diné Power Authority is an enterprise of the Navajo Nation established under Title 21 §201 of the Navajo Nation Code. It was created in 1985 by the Navajo Tribal Council for the purpose of developing electric transmission and generation projects, such as the Project, within the Nation. DPA is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

### III.  JURISDICTION AND VENUE

13.     This Court has jurisdiction of the subject matter of this action pursuant to section 304(a) of the Act, 42 U.S.C. § 7604(a), and pursuant to 28 U.S.C. § 1331.

14.     Venue is proper in this District pursuant to section 304(a) and section 307(b) of the Act, 42 U.S.C. § 7604(a) and § 7607(b). Any final agency action of the Administrator in this matter will be locally or regionally applicable to the Houston area, where the Company is located.

### IV.  BACKGROUND

#### A.  Statutory and Regulatory Background

15.     The Clean Air Act creates a detailed and comprehensive legal framework designed to protect and enhance the quality of the nation's air while at the same time allowing for economic development.

16.     Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth permitting requirements for power plants and other major industrial facilities to be built in areas that already meet federal air quality standards for clean air. These requirements are designed to protect public

health and welfare and to ensure that economic growth will occur in a manner consistent with the preservation of existing clean air resources. These provisions are generally referred to as the PSD program.

17.    As set forth at 40 C.F.R. § 52.21, any person proposing to construct a major stationary source in an attainment area must first obtain a PSD permit.

18.    Under the PSD program, a "major stationary source" is defined to include fossil-fuel fired steam electric plants of more than 250 million British thermal units (Btu) per hour heat input which emit or have the potential to emit one hundred tons per year or more of any regulated air pollutant. 40 C.F.R. § 52.21(b)(1)(i)(a).

19.    Section 165(c) states:

> Any completed permit application under [the PSD program] for a major emitting facility in any area to which this part applies shall be granted or denied not later than one year after the date of filing of such a completed application.

42 U.S.C. § 7475(c). Section 165(c) establishes a clear, nondiscretionary duty on EPA to take final action on a PSD permit application within twelve months after receiving a complete permit application.

**B. Desert Rock Energy Project Permit Application**

20.    The Project is a major stationary source proposed to be constructed in an area designated as attaining the National Ambient Air Quality Standards.

21.    Since 2003, DPA and the Company (or its predecessors) have been working with EPA to secure a PSD permit for the Project.

22.    The PSD Permit Application for the Project was initially submitted to EPA in February 2004 and the final Permit Application was submitted on May 7, 2004.

23.     EPA issued a letter finding the application to be complete on May 21, 2004. A true and correct copy of this letter is attached to this Complaint as Exhibit A and incorporated by reference herein.

24.     Under Section 165(c) of the CAA, 42 U.S.C. § 7475(c), EPA was required to take final action on the PSD permit application for the Project no later than May 21, 2005. EPA has disregarded its nondiscretionary duty and still has not taken final action on the permit, even though the statutory deadline for such action was almost three years ago.

## NOTICES

25.     Section 304(a)(2) of the Act, 42 U.S.C. § 7604(a)(2), provides that:

> Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf . . . against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

26.     Section 304(b)(2) of the Act, 42 U.S.C. § 7604(b)(2), provides that "no action may be commenced . . . under subsection (a)(2) of this section prior to 60 days after the plaintiff has given notice of such action to the Administrator."

27.     On January 17, 2008, Plaintiffs gave notice of their intent to sue to Defendants. Plaintiffs gave notice to Defendants of this civil action in letters addressed to the Administrator dated January 17, 2008 (the "Notice Letters"). True and correct copies of the Notice Letters are attached to this Complaint as Exhibits B and C and incorporated by reference herein. These Notice Letters satisfy the pre-suit notice requirement of section 304(b) of the Act, 42 U.S.C. § 7604(b).

28.     The 60-day period established in 42 U.S.C. § 7604(b), between issuance of the Notice Letters and commencement of this civil action, expired on March 17, 2008.

## CLAIM FOR RELIEF

29.     Paragraphs 1 through 29 are realleged and incorporated herein by reference.

30.     Defendants have failed to perform their nondiscretionary duty under section 165(c) of the Act, 42 U.S.C. § 7475(c), to either grant or deny the completed Permit Application for a permit under the PSD program for the Project not later than one year after the date of filing of such completed application.

31.     Absent an appropriate order of this Court, Defendants will continue to disregard this statutory duty and not render a decision on the PSD permit for the Project.

32.     As provided in sections 304(a) and (d) of the Act, 42 U.S.C. § 7604(a) and (d), Defendants' failure to perform their nondiscretionary duty subjects them to injunctive relief, costs, and attorneys' fees for this action that this Court determines appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Desert Rock Energy Company, LLC and the Diné Power Authority request that this Court:

1.     Order Defendants to immediately grant or deny the Desert Rock Energy Project PSD permit as required by the CAA;

2.     Order Defendants to take other appropriate actions to remedy, mitigate, and offset the harm to Plaintiffs caused by Defendants' disregard of their statutory duty;

3.     Award Plaintiffs their attorneys' fees and costs of this action; and

4.     Grant such other relief as the Court deems just and proper.

Dated:  March 18, 2008

Respectfully submitted,

**BRACEWELL & GIULIANI LLP**

_____ s/ M. Coy Connelly _____
M. Coy Connelly
TBA No. 00793541
SDTX Bar No. 19410

711 Louisiana Street, Suite 2300
Houston, Texas 77002-2770
Telephone:  (713) 221-1335
Telecopier:  (713) 221-2159

*Attorney-in-Charge*

OF COUNSEL:
Bracewell & Giuliani LLP
Jeffrey R. Holmstead
D.C. Bar No. 457974
*(pro hac vice application pending)*

2000 K St., NW, Suite 500
Washington, DC 20006-1872
Telephone: (202) 828-5852
Telecopier: (202) 857-4812

ATTORNEYS FOR PLAINTIFF
DESERT ROCK ENERGY COMPANY, LLC

ATER WYNNE LLP


_____s/ Douglas C. MacCourt_____
Mr. Douglas C. MacCourt
Oregon Bar No. 89078
*(pro hac vice application pending)*

Suite 1800
222 S.W. Columbia Street
Portland OR 97201-6618
Telephone:  (503) 226-8672
Telecopier:  (503) 226-0079

*Attorney-in-Charge*


OF COUNSEL:
Schaff & Clark Deschene, LLC
Cristopher L. Clark Deschene
Arizona State Bar 024354
*(pro hac vice application to be submitted)*

749 Deer Trail Road
Boulder, CO  80302
Telephone:  (303) 443-0182
Telecopier:  (303) 443-0183


ATTORNEYS FOR PLAINTIFF
THE DINÉ POWER AUTHORITY

# EXHIBIT A



*Desert Rock*

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION IX
75 Hawthorne Street
San Francisco, CA 94105-3901



May 21, 2004

IN REPLY    AIR-3
REFER TO:   NSR 4-1-3
           AZP 04-01

Gus Eghneim, Ph.D., P.E.
Director, Environmental Affairs
Steag Power, LLC
Three Riverway, Suite 1100
Houston, Texas 77056

Re:      Prevention of Significant Deterioration Application
        for the Desert Rock Energy Facility

Dear Mr. Eghneim:

This letter is in response to your application, dated February 22, 2004, and received by this office on February 23, 2004, for an Environmental Protection Agency Prevention of Significant Deterioration (PSD) Approval to Construct. On May 7, 2004, we also received additional information regarding project emissions, BACT, and the air modeling and impact analysis. The application is for the construction and operation of the Desert Rock Energy Facility, a 1500 MW coal-fired power plant to be located in the Four Corners area of the Navajo Nation.

After our review of the above application and supporting information, we have determined that it is administratively complete. A preliminary determination, which will include an Ambient Air Quality Impact Report (AAQIR) and draft permit, will be developed. It is possible that we will need clarifying information on one or more parts of the application before we can issue a draft permit.

This notification of completeness does not imply that the EPA agrees with any analyses, conclusions or positions contained in the application. Also, if you should request a suspension in the processing of the application, or submit new information indicating a significant change in the project design, ambient impact or emissions, this determination of completeness may be revised.

Upon issuance of the preliminary determination on the PSD application, we will publish a public notice of our intent to issue the permit. The comment period specified in the notice shall be at least 30 days. Please be advised that at anytime anyone may have full access to the application materials and other information you provide to us in connection with this permit action.

*Printed on Recycled Paper*

-2-

This letter is also to inform you of your rights to claim business confidentiality under 40 CFR 2, Subpart B for any part of or all of the information you provide us, and to document for our files that we have done so. If you do not make a claim of confidentiality for any of this material within 15 days of the date you receive this letter you will have waived your right to do so.

If you have any questions concerning a claim of confidentiality or any questions concerning the review of your application, please contact Bob Baker of my staff at (415) 972-3979.

Sincerely,

Gerardo C. Rios
Chief, Permits Office
Air Division

Enclosure

cc:    Calvert Curley, Navajo Nation EPA
       Dirk Straussfeld, Steag Power

# EXHIBIT B

# BRACEWELL &GIULIANI

| | |
|---|---|
| Texas<br>New York<br>Washington, DC<br>Connecticut<br>Dubai<br>Kazakhstan<br>London | Jeffrey R. Holmstead<br>Partner<br><br>202.828.5852 Office<br>202.857.4812 Fax<br><br>jeff.holmstead@bgllp.com<br><br>Bracewell & Giuliani LLP<br>2000 K Street NW<br>Suite 500<br>Washington, DC<br>20006-1872 |

January 17, 2008

**VIA ELECTRONIC MAIL AND CERTIFIED MAIL**

The Honorable Stephen L. Johnson
Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

> Re:   Notice of Intent to Sue EPA for Its Failure to Act on Desert Rock PSD Permit
> as required by the Clean Air Act

Dear Mr. Johnson:

I am writing on behalf of Desert Rock Energy Company, LLC, an indirect wholly-owned subsidiary of Sithe Global Power, LLC (Sithe) and successor of Steag Power, LLC – the initial applicant for a Prevention of Significant Deterioration (PSD) permit for the Desert Rock Energy Project (permit number: AZP 04-01). In accordance with section 304 of the Clean Air Act, 42 U.S.C. §7604(a)(2), this letter shall serve as formal notice of Sithe's intent to file suit against the U.S. Environmental Protection Agency (EPA) for EPA's failure to perform its mandatory duty under the Clean Air Act to issue the PSD permit for the Desert Rock Project in a timely fashion. Section 165 of the Clean Air Act requires EPA to take final action on a PSD permit within 12 months after receiving a complete permit application. 42 U.S.C. §7475(c). As you are aware, EPA found the Desert Rock PSD permit application to be complete on May 21, 2004. Thus, by statute, EPA was required to act on the permit almost three years ago.

Section 304 of the Clean Air Act authorizes civil actions against the Administrator to compel him or her to perform any act or duty that is not discretionary under the Clean Air Act. 42 U.S.C. §7604(a)(2). The Administrative Procedure Act, 5 U.S.C. § 706, as well as Section 304 of the Clean Air Act, also authorizes lawsuits to compel EPA to take actions, such as permitting decisions, that have been unreasonably delayed. This letter provides the necessary notice required before such actions can be filed, which may occur sixty (60) days (for a mandatory duty suit) and one-hundred and eighty (180) days (for a suit based on EPA's unreasonale delay) from the date of this letter. 42 U.S.C. § 7604. If Sithe finds it necessary to file any such action, it will seek all appropriate relief, including injunctive, declaratory, monetary, and any other relief as may be awarded by a court of competent jurisdiction.

The Honorable Stephen L. Johnson
January 17, 2008
Page 2

Sithe and its predecessors began working with EPA in 2003 to obtain a PSD permit for Desert Rock, and we have been working cooperatively with EPA since that time. Throughout this period, we have also worked closely with the Navajo Nation, which actually approached Sithe about developing the Desert Rock Project on tribal land. The permit application was submitted to EPA in February 2004, and EPA issued a letter finding the application to be complete on May 21, 2004. More than two years later, in July 2006, EPA issued a proposed permit for public comment. The public comment period ended on November 13, 2006.

Sithe understands that developing a PSD permit for a source like Desert Rock is a complicated undertaking. But there is no reasonable justification for the process to have dragged on for almost three years beyond the statutory deadline for acting on the permit. At the outset, before the application was prepared and submitted, we met with EPA permitting officials to be sure that we understood all the substantive requirements and procedural steps that would be necessary to secure a permit, and how long each step would take. We have carefully followed the path laid out by the Agency. At EPA's request, we engaged in extended consultations with the Federal Land Managers, especially the National Park Service, which eventually concluded that Desert Rock will not have any adverse environmental impact.

For internal planning purposes, we assumed a much longer schedule than the one projected by the Agency in our initial meetings, based on the likelihood that there might be unexpected delays. Now, however, the permitting process has taken much longer than even our worst-case estimates.

Sithe's senior management has a long history of successfully developing power projects throughout the world, but we have never been subjected to this kind of permitting delay. When the Company began to consider the feasibility of the Desert Rock project, it was well aware that it would need to make substantial investments before the plant would become operational and start to repay that investment. The Company was willing to make this investment – already more than $20 million – because of its faith in the U.S. legal and regulatory system. Sithe officials believed that, if they followed the steps laid out in EPA's rules and met all the other legal requirements imposed on new plants, including the obligation to install state-of-the-art emission controls, then EPA would also follow the rules and issue a permit in a timely fashion. The Company has not only followed the rules, but has gone beyond what the law requires to protect the environment. We are proud to say that Desert Rock will be the cleanest coal-fired power plant in the country. Yet the Company still does not have a PSD permit that, by law, it should have received almost three years ago.

President Joe Shirley, Jr., the elected leader of the Navajo Nation, recently sent a letter (attached) urging you, in the strongest possible terms, to issue the permit without further delay. He discussed the importance of Desert Rock to the Navajo economy, noting that the Plant, once it begins operating, will provide approximately one-third of the annual

The Honorable Stephen L. Johnson
January 17, 2008
Page 3

operating budget for the Navajo Nation.  As he notes in his letter, for every *month* the permit is delayed, the Navajo Nation loses more than $5 million in tax revenue.

Please keep in mind that we did not approach the Navajo Nation with the idea of developing a power plant on tribal land.  Seeking economic development for its people, the Navajo Nation specifically created the Diné Power Authority (DPA) to develop energy resources on Navajo land.  After interviewing a number of potential developers, DPA selected Sithe as the one that would best reflect tribal values and best address the economic needs of the Navajo Nation.

Although the career staff at EPA has worked diligently to finalize the permit, we cannot help but have the impression that, at more senior levels within the Agency, there is no sense of urgency about getting the permit out – and a complete disregard for the Agency's statutory obligation to make permitting decisions within 12 months of receiving a complete application.  This disregard has been grossly unfair to Sithe and the Navajo Nation.

After all the hard work by Sithe and EPA permitting officials, Sithe is disappointed that EPA has not yet completed the permitting process that we both started almost five years ago.  We respectfully request that you issue the permit without further delay.  We sincerely hope that it will not be necessary for us to bring a lawsuit to force the Agency to issue a permit that, by law, it should have issued almost three years ago.  Unless EPA acts within the 60-day notice period, we are prepared to file a complaint seeking all appropriate remedies from a court of competent jurisdiction.

Very truly yours,

Bracewell & Giuliani LLP

*for* Jeffrey R. Holmstead

cc:   Wayne Nastri, Regional Administrator, EPA Region 9
      Roger Martella, EPA General Counsel
      Robert Meyers, EPA Principal Deputy Assistant Administrator for Air and Radiation
      Martin B. Rosenberg, President, Sithe Global Power, LLC
      Dirk Straussfeld, Executive Vice President for Development, Sithe Global Power, LLC
      Jeremiah P. Sheehan, General Counsel, Sithe Global Power, LLC

Attachment



**DR. JOE SHIRLEY, JR.** | **BEN SHELLY**
President | Vice President

September 20, 2007

Mr. Stephen L. Johnson
Administrator
United States Environmental Protection Agency
Ronald Reagan Building
1300 Pennsylvania Avenue N.W.
Washington, DC 20004

    **Re:** *Desert Rock Energy Center (AZP 04-01)*

Dear Administrator Johnson:

As the elected leader of the Navajo Nation and the Navajo people, I want to take this opportunity to thank everyone at EPA for continuing their hard work to issue a final PSD permit for the Desert Rock Energy Center.

As you are probably aware, the Navajo Nation through its Diné Power Authority has been working closely with EPA Region 9 staff for almost four years to insure that EPA received all of the information necessary to prepare a complete and accurate permit application. As you are also probably aware, in early 2005 I wrote to EPA Region 9 Administrator Wayne Nastri and confirmed in the strongest possible terms that the Navajo Nation needs EPA's dedicated assistance to conclude air permitting activities for the Desert Rock Energy Center "in the very near future." At that point in time over two years ago, the draft 2004-2005 statistics for the Navajo economy were about to be published. We suspected that Navajo economic conditions had worsened from prior years and that without projects like the Desert Rock Energy Center these conditions would continue to decline.

Unfortunately, our assumptions were proven to be correct. The 2005-2006 assessment of the Navajo economy showed that unemployment on the Navajo Nation soared to a record 49% in 2005 and raw data shows this figure may exceed 50% today. Compare this to Washington DC unemployment for July 2007 at 6.0% (seasonally adjusted rate is 5.7% for July, 2007; in June 2007, the DC area showed its worst rate at 7.5%). The Navajo unemployment rate is about seven times higher than the 2005 low for Washington DC. The per capita income on the Navajo Nation is $8,240.00, about four times less than the US rate. The Census 2000 found that 43% of Navajo individuals were living below the poverty level.

As someone who has visited the Navajo Nation, I am sure you would agree that it is no longer acceptable that Navajos live in depression-era conditions while other US citizens outside of federal reservations live under much better conditions. Large-scale projects like the Desert Rock Energy Center are essential to correcting this imbalance. During the first year of operations, the Desert Rock Energy Center will bring $54 million in annual revenues

to the Navajo Nation. Revenues from the Desert Rock Energy Center will go directly to the Navajo Treasury and will be distributed to a wide range of indispensable programs for the Navajo people such as fire, police, health care, education, drug abuse treatment and counseling, environmental protection and other social services. Every month that the Desert Rock Energy Center is delayed, the Navajo Nation loses approximately $ 4.5 million per month, and our programs continue to suffer.

The Navajo Nation is very proud of Diné Power Authority and Sithe Global Power LLC and their work to ensure that the Desert Rock Energy Center is a model of environmental quality and efficiency. As the permit application shows, the Desert Rock Energy Center will be the cleanest coal-fired power plant in the United States, ten times cleaner than nearby plants and setting a new baseline for future coal-fired generation. Through state-of-the-art hybrid dry cooling, the Desert Rock Energy Center conserves precious water resources and uses approximately 85% less water that nearby plants with traditional cooling technology.

Desert Rock will generate approximately one-third of the Navajo Nation's currently declining annual operating budget for the Navajo Nation. In addition, Desert Rock will create between 2,000 and 3,000 construction jobs at peak development. As the elected leader of the Navajo People, I believe it is also important to mention that the project construction and operation will be realized by Union labor respecting Navajo Preference in Employment. Construction of the Desert Rock Energy Center will take approximately four (4) years. In addition to significant additional service jobs and a wide range of secondary employment, upon commencement of operations, the Desert Rock Energy Center will train and employ 200+ individuals and the related coal mining operation will employ another 200+ individuals. Again, every month that the project is delayed, these family-wage jobs, and the benefits and opportunities these jobs bring to Navajo families, are not realized by the people who need them the most.

Beyond employment and revenues, the Desert Rock Energy Center, as a private investment project, offers the unique opportunity for significant Navajo Nation ownership (25% outright, up to an aggregate of 49% depending on extent of other equity investment). Desert Rock Energy Center is an "added value" project to the Navajo Nation. Navajo coal, water, land, and labor will stay on the Navajo Nation to produce greater revenues for the Navajo people. Desert Rock Energy Center benefits will supplement, and in some cases, replace the revenues which are being lost from the shutdown of mining operations and impacts to other projects such as the recent closure of the Mohave Generating Station (fueled by Navajo coal) and the pending closure of the Pittsburgh and Midway mine.

Simply put, your attention to this matter is critical. We understand and appreciate the challenging job that EPA staff is doing to prepare a complete record for its decision on this permit. All we ask is that EPA leaders like yourself and Region 9 Administrator Nastri act without delay to complete the permit review and analysis, and issue the final permit as soon as possible to avoid further burden to the Navajo Nation.

In closing, I would like to share the following remarks of Senator John McCain, speaking before the Navajo Nation Council on January 18, 1996:

2

"Each of us shares a strong commitment to promote and defend tribal sovereignty, tribal self governance, and tribal self sufficiency. But my friends, these things we hold dear, will whither and die unless they are watered by a strong Reservation economy that produces a decent standard of living for all of our people. Unfortunately, as you well know, economic development success stories in Indian Country are still the exception and not the rule."

Administrator Johnson, I ask that you do everything within your power to help Region 9 issue this permit as soon as possible in accordance with all applicable law. Thank you for your consideration of these matters.

Sincerely,

Dr. Joe Shirley, Jr.,
THE NAVAJO NATION

xc: Wayne Nastri, Administrator, US EPA Region 9

3

# EXHIBIT C



|  |  |
|---|---|
| **DR. JOE SHIRLEY, JR.** <br> President | **BEN SHELLY** <br> Vice President |

January 17, 2008

**By E-Mail and Certified Mail**

The Honorable Stephen L. Johnson
Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC  20460

*RE:   Notice of Intent to Sue for EPA's Failure to Act on Desert Rock PSD Permit*

Dear Mr. Johnson:

The Navajo Nation and the Diné Power Authority, a Navajo Nation Enterprise, are by this letter writing to notify you of their intent to file a lawsuit against the U.S. Environmental Protection Agency (EPA) for EPA's failure to perform its mandatory and nondiscretionary duty under the Clean Air Act to act on the Prevention of Significant Deterioration (PSD) permit for the Desert Rock Energy Project (permit number: AZP 04-01) in a timely fashion. Section 165 of the Clean Air Act imposes a duty on EPA to make a PSD permit decision within 12 months after receiving a complete permit application. 42 U.S.C. §7475(c). The Agency made a formal determination that the permit application for Desert Rock was complete on May 21, 2004. Pursuant to the Clean Air Act, EPA was required to act on the permit almost three years ago.

The citizen suit provisions of section 304 of the Clean Air Act authorize any person to commence a civil action against the Administrator to compel him or her to perform any act or duty that is not discretionary under the Clean Air Act. 42 U.S.C. §7604(a)(2). Furthermore, the Administrative Procedures Act allows a reviewing court to compel EPA to act when it finds that the Agency has unreasonably delayed such action. 5 U.S.C. § 706. This letter provides the necessary notice required before such actions can be filed, which may occur sixty (60) days (for a mandatory duty action) and one-hundred and eighty (180) days (for an action based on EPA's unreasonable delay) from the date of this letter. 42 U.S.C. §7604(b). If the Navajo Nation or Diné Power Authority bring any such action, both parties will seek appropriate declaratory, injunctive, or any other relief as may be awarded by a court of competent jurisdiction.

The Navajo Nation, working through the Diné Power Authority, has worked cooperatively with EPA on the Desert Rock Energy Project for more than five years. We believe that Desert Rock has satisfied all the technical and procedural requests made by EPA, and that all the technical, environmental and legal issues have now been resolved. Desert Rock will be the cleanest coal-fired power plant in the United States, using highly-efficient, supercritical boiler technology with the most advanced pollution controls.

As recognized in EPA's own July 2006 press release, the draft PSD permit contains the most stringent emission standards imposed on any coal-fired power plant in the U.S., and we understand that, as a result of public comments on the draft permit, the final permit may include certain limits that are even more stringent. In addition, we have worked closely with EPA, federal land managers and the Navajo Nation EPA to provide voluntary emissions reductions that are above and beyond those required by any law. EPA's unlawful delay and its failure to issue the final PSD permit are inhibiting the growth and independence of the Navajo Nation, the largest sovereign Indian Nation in the United States. Today, we see prosperity, growth and development all around us, but not within our own borders. Every highway leading off the Nation leads to a flourishing economy, and every highway leading onto the Nation leads to economic silence. Once construction begins (which cannot start until EPA acts on the PSD permit), Desert Rock will be the largest economic development project in Indian Country in the United States.

Desert Rock is key to building the Navajo economy. To the Navajos, this project represents self-determination, jobs and income for our people. Navajos have waited many years for an opportunity like this and have often seen such opportunities go to others. The Navajo Nation's stance on this project is reflected in the Navajo Nation Council's overwhelming supermajority vote of 66-7 to issue the lease, sub-lease, and alternative tax agreements for the project, and the Eastern Agency Council's, representing 31 Navajo chapters, 96-0 vote to support the construction and operation of this project. EPA's delay in issuing the permit should not be the reason for a possible missed opportunity of this proportion that would affect all of the Navajo people, especially when Desert Rock will meet or exceed all requirements of the Clean Air Act.

EPA has a federal trust responsibility to the Navajo Nation. More than two years after EPA issued its determination that the permit application for Desert Rock was complete, in July 2006 EPA issued a proposed permit for public comment. The public comment period ended on November 13, 2006. Further delay by EPA ignores this responsibility, and hinders the efforts of the Navajo Nation to perpetuate our culture and way of life, and return us to the independence we once knew as a people. Given the stringent environmental standards imposed by your Agency on the Desert Rock project, there is no reason for further delay. The Navajo Nation and Diné Power Authority would like to avoid the filing of a lawsuit to compel EPA to perform its duty to act on the pending permit application after almost 4 years of processing, but we are committed to taking the steps necessary to secure the Navajo Nation's economic and energy future.

Sincerely,

Dr. Joe Shirley Jr., President
THE NAVAJO NATION

Tim T. Goodluck, Chair
Diné Power Authority Board of Directors

Steven C. Begay, General Manager
Diné Power Authority

cc:   Wayne Nastri
Regional Administrator
U.S. Environmental Protection Agency Region 9
Mail Code ORA-1
75 Hawthorne Street
San Francisco, CA  94105

Robert E. Myers
Principal Deputy Assistant Administrator
Office of Air and Radiation
U.S. Environmental Protection Agency
Mail Code 5204P
1200 Pennsylvania Ave. N.W.
Washington, DC  20460

Roger R. Martella
General Counsel
U.S. Environmental Protection Agency
Mail Code 2310A
1200 Pennsylvania Ave. N.W.
Washington, DC  20460