THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DESERT ROCK ENERGY COMPANY, § <br> LLC AND THE DINÉ POWER § <br> AUTHORITY, § <br>       Plaintiffs § <br> § <br> vs. § <br> § <br> U.S. ENVIRONMENTAL PROTECTION § <br> AGENCY AND STEPHEN L. JOHNSON, § <br> ADMINISTRATOR, U.S. § <br> ENVIRONMENTAL PROTECTION § <br> AGENCY, § <br>       Defendants § | CIVIL ACTION NO. 4:08-CV-872 |

**PLAINTIFF DESERT ROCK ENERGY COMPANY, LLC'S
APPLICATION FOR LITIGATION COSTS AND ATTORNEYS' FEES**

Plaintiff Desert Rock Energy Company, LLC ("Desert Rock"), moves for the award of its litigation costs and attorneys' fees pursuant to the Clean Air Act, 42 U.S.C. § 7604(d), as follows:

**I.   CASE BACKGROUND**

On March 21, 2008, Plaintiffs Desert Rock Energy Company, LLC ("Desert Rock") and Diné Power Authority (collectively, "Plaintiffs") served upon the United States a Complaint pursuant to section 304(a) of the Clean Air Act ("CAA"), 42 U.S.C. § 7604(a). As alleged in the Complaint, Defendants United States Environmental Protection Agency and Stephen L. Johnson, as Administrator of the United States Environmental Protection Agency, (collectively, "EPA") failed to perform a mandatory duty pursuant to CAA § 165(c), 42 U.S.C. § 7475(c). Specifically, EPA failed to take action on Desert Rock's application for a Prevention of Significant Deterioration ("PSD") permit in connection with its construction of a coal-fired power plant on land held by the United

States Government in trust for the benefit of the Navajo Nation (the "Permit Application"). According to CAA § 165(c), EPA's action on the Permit Application was over three years late.[1]

On June 9, 2008, EPA lodged a signed consent decree with this Court agreeing to act on the Permit Application on or before July 31, 2008. EPA did in fact act on the Permit Application as promised, and on August 13, 2008, this Court signed an Order of Dismissal, retaining jurisdiction for the purpose of resolving any claims for costs of litigation, including attorneys' fees, under 42 U.S.C. § 7604(d). Plaintiffs and Defendants (collectively, "the Parties") endeavored to resolve their issues regarding attorneys' fees and litigation costs without the need for consideration of the issue by the Court. However, the Parties have been unable to reach agreement, and thus Desert Rock now brings this Application.

## II.  THE STANDARD FOR RECOVERY OF ATTORNEYS' FEES

The CAA provides that attorneys' fees may be awarded in a citizen suit "whenever the court determines such award is appropriate." 42 U.S.C. § 7604(d). The Fifth Circuit has held that in the case of fee-shifting statutes containing such "whenever...appropriate" language, awards of attorneys' fees are warranted where a party achieves "some degree of success on the merits." *Blue Skies Alliance v. Texas Comm'n on Envtl. Quality*, 265 Fed.App'x. 203, 206 (5th Cir. 2008). Alternatively, under the "catalyst theory," fees may be awarded where the plaintiff's lawsuit constitutes a "substantial factor or significant catalyst" in changing the defendant agency's behavior. *Foreman v. Dallas County*, 193 F.3d 314, 320 (5th Cir. 1999).

### A.  Desert Rock Has Achieved More Than "Some Success" On the Merits

Applying section 7604(d)'s "whenever...appropriate" fee-shifting provision, the Fifth Circuit has held that awards are not limited to "prevailing," "substantially prevailing," or "successful"

---

[1] Section 165(c) of the CAA requires that EPA take action on a PSD permit application within one year after the application is complete. 42 U.S.C. § 7475(c). Desert Rock received a letter from EPA dated May 21, 2004, indicating

parties, as they are in other statutes, but are warranted where a party achieves "some degree of success on the merits." *Blue Skies*, 265 Fed.App'x. at 206 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)); *see also Avoyelles Sportsmen's League v. Marsh*, 786 F.2d 631, 637 (5th Cir. 1986) ("federal defendants should not be able to insulate the government from all attorney fees liability simply by yielding to the plaintiff's demands after the litigation begins but before it proceeds to final judgment"). Quoting from Black's Law Dictionary, the Fifth Circuit defined the "merits" of a case as the "elements or grounds of a claim or defense; the substantive consideration to be taken into account in deciding a case." *Id.* at 206 n.8.

Desert Rock's underlying claim is against the EPA and its Administrator for failing to issue a PSD permit under the CAA. The "grounds for these claims, and hence the merits of the suit, are the [EPA] Administrator's inaction." *Blue Skies*, 265 Fed.App'x. at 207. Desert Rock achieved more than "some success on the merits" of this claim when the EPA signed and lodged a consent decree with the Court on June 9, 2008, and subsequently acted on the Permit Application on July 31, 2008. Desert Rock seeks to recover attorneys' fees from the EPA directly. Unlike the plaintiff in *Blue Skies*, the grounds for Desert Rock's claim, the EPA Administrator's inaction, are therefore directly related to the agency from which it seeks to recover fees.

An important inquiry in determining whether a plaintiff has achieved "some success on the merits" is whether that party has served the key purpose of ensuring the agency fulfills its duties under a statute responsibly. *See Nat'l Wildlife Federation v. Hanson*, 859 F.2d 313 (4th Cir. 1988); *see also Florida Power & Light Co. v. Costle*, 683 F.2d 941, 942 (5th Cir. 1982) (noting the legislative history of the CAA indicates that its purpose is to "encourage litigation which will assure proper implementation and administration of the Act or otherwise serve the public interest"); *Pound*

---

that its PSD permit application was deemed complete.

*v. Airosol Co.*, 498 F.3d 1089, 1102 (10th Cir. 2007) (holding plaintiffs who help promote a proper implementation of the CAA are entitled to attorneys' fees, regardless of financial motivation).

The Fourth Circuit in *Hanson* held that the Clean Water Act's "whenever…appropriate" fee-shifting provision supported an award of attorneys' fees for the plaintiffs based only on a remand order. *Id.* The court explained that such an order "serve[d] a key purpose of the citizen suit provisions which is to ensure that the agencies fulfill their duties under the [Clean Water Act] responsibly." *Id.*

One of the purposes of the CAA, as the Fifth Circuit noted in *Costle*, is to "encourage litigation which will ensure proper implementation and administration of the Act." 683 F.2d at 942. Among the various duties of the EPA under this statute is to issue PSD permits to ensure, among other things, that a project will not violate any air quality standards and will implement the "best available control technology" to control air emissions. Desert Rock initiated this litigation with the purpose of ensuring that the EPA consider its PSD permit application, as required by the CAA. Given the three years that had elapsed since the time limit for such consideration expired, it is clear this action by Desert Rock was required to ensure EPA fulfill its responsibilities under this statute. Because Desert Rock's complaint led to a consent decree being lodged with this Court and a subsequent dismissal and action on the Permit Application by EPA, Desert Rock has achieved more than "some degree of success on the merits" and is entitled to attorneys' fees under section 304(d).

**B.  Desert Rock Was a "Substantial Catalyst" In Causing EPA To Act on the Permit Application**

Not only is the award of Desert Rock's attorney's fees and litigation costs warranted based on its "success on the merits," but, in the alternative, Desert Rock is entitled to recover its fees and costs under the catalyst theory, as its claim against the EPA was the "catalyst" that caused the agency to act on the Permit Application.

1. *The Catalyst Theory Is Applicable Under the Clean Air Act's "Whenever...Appropriate" Fee-Shifting Provision*

The catalyst theory has been restricted by the Supreme Court in the context of statutes with fee-shifting provisions which limit awards to "prevailing parties." *Buckhannon Bd. & Care Home, Inc. v. West Va. Dept. of H&HR*, 532 U.S. 598, 605-06 (2001). However, the overwhelming weight of authority from federal circuit courts plainly demonstrates that any limitation ends there. *See Assoc. of Cal. Water Agencies v. Evans*, 386 F.3d 879, 885 (9th Cir. 2004) (holding *Buckhannon* does not preclude use of the catalyst theory for suits brought under statutes which award costs "whenever...appropriate"); *Loggerhead Turtle v. County Council of Volusia County*, 307 F.3d 1318, 1327 (11th Cir. 2002) (catalyst theory is still viable based on legislative history, a negative inference from *Buckhannon*, and an absence of "mischievous" incentives where only equitable relief is available); *Sierra Club v. EPA*, 322 F.3d 718, 725-26 (D.C. Cir. 2003) (holding the Supreme Court's positive reference to its use in "whenever...appropriate" statutes in *Ruckelshaus* and lack of any reference to such statutory language in *Buckhannon* demonstrate its continued applicability); *Center for Biological Diversity v. Norton*, 262 F.3d 1077, 1080-81 (10th Cir. 2001) (distinguishing *Buckhannon* as applying only to "prevailing party" statutes, even though the issue was not raised by the parties). The Fifth Circuit has likewise restricted the catalyst theory's application in statutes with "prevailing party" fee-shifting provisions, but like other circuits, it has not articulated a similar limitation in statutes with "whenever...appropriate" provisions. *Blue Skies*, 265 Fed.Appx. at 206 n.1.

The various circuits have provided ample justification for the catalyst theory's continued applicability with regard to "whenever...appropriate" fee-shifting provisions. The Ninth Circuit distinguished its holding in *Evans* from the Supreme Court's in *Buckhannon* based on the plainly different "whenever...appropriate" language of the Endangered Species Act. *Evans*, 286 F.3d at 885.

The court reasoned that "although *Buckhannon* does preclude use of the catalyst theory for suits brought under statutes providing for fee shifting for a 'prevailing party,' the decision does not preclude use of the catalyst theory for suits brought under statutes like the ESA, which allow the court to award costs of litigation 'whenever...appropriate.'" *Id.* Similarly, the Tenth Circuit went out of its way to distinguish *Buckhannon* as applying only to "prevailing party" statutes even though that issue was not raised by the parties. *Center for Biological Diversity v. Norton*, 262 F.3d 1077, 1080-81 (10th Cir. 2001).

The Eleventh Circuit likewise applied the catalyst theory to the fee-shifting provision of the Endangered Species Act, citing three distinct justifications for its decision. *Loggerhead Turtle*, 307 F.3d at 1326. These were: (1) a Senate Report from the Clean Water Act demonstrating Congressional intent that plaintiffs further the goals of such statutes; (2) the absence of any reference to such statutes in *Buckhannon*; and (3) the fact that only equitable relief is available under the ESA, as opposed to the ADA and FHAA, under which plaintiffs' claims for money damages prevent "mischievous defendants" from unilaterally mooting an action before judgment to avoid attorneys' fees. *Id.* Desert Rock notes that, like the Endangered Species Act, the CAA poses no threat of abuse by "mischievous defendants" where plaintiffs like Desert Rock only seek the equitable relief of having a permit ruled upon.

The D.C. Circuit has joined the Second, Ninth, and Eleventh Circuits in limiting *Buckhannon* to "prevailing party" statutes. *Sierra Club v. EPA*, 322 F.3d 718, 725-26 (D.C. Cir. 2003). The court relied heavily on a footnote from the Supreme Court's opinion in *Ruckelshaus v. Sierra Club*, which made reference to the catalyst theory as a "less sweeping innovation" than the more "far-reaching" result the Supreme Court rejected in *Ruckelshaus*: recovery by parties who *lost* on the merits. *Id.* at 263 (quoting *Ruckelshaus*, 463 U.S. 686 n. 8). The *Ruckelshaus* Court interpreted the Clean Air

Act's "whenever...appropriate" provision as authorizing fee awards for "suits that forced defendants to abandon illegal conduct, although without a formal court order." 463 U.S. at 686 n. 8. The D.C. Circuit reasoned that the Supreme Court's subsequent failure in *Buckhannon* to overrule or even acknowledge this clear reference to the catalyst theory dictated that fee awards under that theory remained unencumbered for "whenever...appropriate" statutes. *Sierra Club*, 322 F.3d at 263.

The foregoing weight of circuit court reasoning provides ample justification for the catalyst theory's application to the Clean Air Act's "whenever...appropriate" fee-shifting provision.

    2.    *Desert Rock's Citizen Suit Was a "Substantial Factor" and "Significant Catalyst" In Causing EPA To Issue a PSD Permit*

The catalyst theory provides that a party may recover its attorneys' fees where "(1) the relief sought by the plaintiff was in fact obtained, and (2) the suit itself caused the defendant to alter its conduct." *Foreman*, 193 F.3d at 320. This occurs when a lawsuit is a "substantial factor or a significant catalyst" in motivating the defendant to alter its behavior. *Id.* (quoting *Robinson v. Kimbrough*, 652 F.2d 458, 466 (5th Cir. 1981)). "Plaintiffs do not have to prove that their efforts were the sole reason for the defendant's rectifying actions." *Posada v. Lamb County, Tex.*, 716 F.2d 1066, 1072 (5th Cir. 1983). Further, "there is no reason to require the plaintiff to prove, in addition, that the defendant's conduct fulfilled a legal obligation or otherwise to show the defendant's motivation." *Hennigan v. Ouachita Parish School Bd.*, 749 F.2d 1148, 1152-53 (5th Cir. 1983).

Where a plaintiff brings a claim with "no colorable, or even reasonable, likelihood of success on the merits," it is not entitled to recover attorneys' fees just because the defendant happens to change its behavior for reasons unrelated to the merits of the suit. *Id.* at 1153. By the same token, a defendant claiming the change was a "wholly gratuitous response to a lawsuit that lacked colorable merit must demonstrate the worthlessness of the plaintiff's claims and explain why he nonetheless voluntarily gave the plaintiffs the requested relief." *Id.*

In this case it is clear that the citizen suit by Desert Rock provided the impetus for EPA's action on the Permit Application. The initial application for the Project was submitted to EPA in February 2004, and EPA notified the permit applicant by letter dated May 21, 2004, that the Permit Application was complete. Under Section 165(c) of the CAA, 42 U.S.C. § 7475(c), EPA is required to take final action on a PSD permit within one year of receiving a complete application. Thus, by law, Defendants should have made a decision regarding the PSD permit for the project no later than May 21, 2005.

Desert Rock filed its citizen suit under section 304(a) on March 18, 2008, to compel EPA to perform its mandatory duty of taking final action on a permit necessary to begin construction of the Desert Rock power plant. This leaves a period of nearly three years between the expiration of EPA's time limit for ruling on Desert Rock's application and the filing of Desert Rock's complaint. During that time Desert Rock tried tirelessly to encourage EPA action. *See* Declaration of Jeffrey Holmstead, attached as Exhibit B. It would be outlandish to suggest that the complaint did not provide the impetus for, or otherwise constitute a "substantial factor or significant catalyst" in, EPA's issuance of that permit just four months later, on July 31, 2008. *See Posada*, 716 F.2d at 1072 (stating "clues to the provocative effects of the plaintiffs' legal efforts are often best gleaned from the chronology of events"); *Luethje v. Peavine School Dist. of Adair County*, 872 F.2d 352, 354 (10th Cir. 1989) (holding chronology may be used to establish the necessary causal link); *Ortiz De Arroyo v. Barcelo*, 765 F.2d 275, 282 (1st Cir. 1985) (chronology of events is "an important factor" in deciding causation).

Because Desert Rock's Complaint against the EPA constituted a "substantial factor or significant catalyst" in the EPA's issuance of a PSD permit, as has been amply demonstrated by the chronology of that permit's issuance, Desert Rock is entitled to recovery of its attorneys' fees and

costs of litigation.

### III. DESERT ROCK'S CLAIM FOR ATTORNEYS' FEES AND COSTS

Desert Rock requests $301,960.23 in attorneys' fees and litigation costs. This amount is reasonable because it accurately reflects the number of hours reasonably spent on this complex litigation multiplied by a reasonable hourly rate.

#### A. The Lodestar

The determination of a reasonable fee begins with "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This results in a "lodestar" figure, which is presumed to be the reasonable fee to which counsel is entitled. *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 478 U.S. 546, 564 (1986). Although a trial judge has discretion in his or her final determination of the reasonable billing rate, *Hensley*, 461 U.S. at 437 (1983), "[a]n attorney's actual billing rate is presumptively deemed a reasonable rate if it is 'in line with those prevailing in the community for similar lawyers of reasonably comparable skill, experience, and reputation.'" *Bolden v. J & R Incorp.*, 135 F. Supp.2d 177, 179 (D.D.C. 2001) (quoting *Cumberland Mountains Inc. v. Hodel*, 857 F.2d 1516, 1518-19 (D.C. Cir. 1988)).

From January 2008 through January 2009, Desert Rock incurred significant attorneys' fees and costs related to this litigation of which it is seeking $301,960.23. *See* Declaration of M. Coy Connelly, attached as Exhibit A. This figure is derived from contemporaneously created time records detailing hours of work that were neither excessive, duplicative, nor inadequately documented. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

Desert Rock's lodestar is reasonable because it is arrived at by (1) multiplying the number of hours reasonably expended on this case by the corresponding reasonable billing rate for each staff

member who billed these hours and (2) adding reasonable costs. To ensure a reasonable rate was utilized, Desert Rock subtracted ten percent from the client rates ordinarily charged by Bracewell & Giuliani to reflect the actual rates billed in this lawsuit based on the relationship between Desert Rock and that firm.

Standard billing rates for partners in Bracewell & Giuliani's Houston office range from $395 per hour to $800 per hour (average $597.50). *See* Declaration of Coy Connelly. Its associate rates range from $220 per hour to $475 per hour (average $347.50). *See id.* The rates being sought by Desert Rock are consistent with rates that this Court relied upon in considering the reasonableness of attorneys' fees in the Houston market in 2007. *In re Enron Corp.*, 586 F.Supp.2d 732, 780 (S.D. Tex. 2008) (quoting table compiled from national survey by plaintiff's counsel's expert, detailing the average billing rates for Houston's large firms in 2007 as $344-$720 (average $532) for partners and $200-$400 (average $300) for associates). For each Bracewell & Giuliani partner and associate who expended time on this litigation, Desert Rock seeks to recover fees based on billing rates well within the rates surveyed which were utilized by this Court in litigation *two years ago*. This includes Jeffrey Holmstead, former head of the EPA's Office of Air and Radiation, a lawyer whose singular experience with the Clean Air Act would no doubt qualify him as a "lion" at the environmental bar, and entitle him to a fee higher than what would be considered reasonable for other lawyers in the Houston market. *See In re Enron*, 586 F.Supp.2d at 790.

Desert Rock's attorneys' fees are reasonable for the Houston geographical area, are reasonable for a case of similar nature, and were expended in the prosecution of this action. Additionally, the fees and costs expended by Desert Rock were reasonable given the complexity of issues involved, the novelty of the claims, and the attempted intervention by numerous parties. *See* Declaration of Jeffrey Holmstead.

**B.     Application of the *Johnson* Factors**

The court may adjust the lodestar based upon its analysis of the twelve factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *In re Enron*, 586 F.Supp.2d at 741. The *Johnson* factors are: (1) the time and labor required to represent the client; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

This Court has stated that "[a]n adjustment may only be made if the *Johnson* factor has not already been accounted for in the lodestar." *In re Enron*, 586 F.Supp.2d at 756 (citing authorities). Six of the factors are generally presumed to be included in the lodestar: (1) the novelty and complexity of the issues; (2) the special skill and experience of the counsel; (3) quality of representation; (4) results obtained; (5) time limitations imposed by the client or circumstances; and (6) preclusion of other employment. *Id.* at 756-7.

Furthermore, this Court has held the "most critical factor" of the twelve in determining reasonableness is the degree of success obtained. *Id.* at 761. Desert Rock was entirely successful in this regard, where its lawsuit brought about the approval of its petition and issuance of the PSD permit which the EPA had refused to take action on previously. This was a final and necessary step in order for Desert Rock to commence work on its power plant, a project estimated at over $3 billion.

The other *Johnson* factors also support Desert Rock's lodestar. The time and labor required

to adequately address all the issues was significant. *See* Declarations of Jeffrey Holmstead and Coy Connelly. The action implicated far more complex and sweeping consequences for Desert Rock than is typical for a plaintiff bringing a citizen suit under the CAA, and therefore required extensive analysis of all regulatory and economic aspects of these issues. The strong possibility of future litigation relating to the PSD permit required the drafting and negotiation of a consent decree, the necessity of which has been demonstrated by Desert Rock's ongoing litigation before the Environmental Appeals Board. Further, in having to bring this citizen suit for the issuance of its permit, Desert Rock was required to expend considerable effort engaging with and opposing various intervening parties.

The experience and reputation of Jeffrey Holmstead, addressed above, as a lawyer with extensive familiarity with the Clean Air Act's statutory framework and enforcement further supports the lodestar. Mr. Holmstead headed the EPA's Office of Air and Radiation longer than anyone in that agency's history, and was the architect of several of its most important Rules, including the Clean Air Interstate Rule, the Clean Air Diesel Rule, the Mercury Rule for power plants and the reform of the New Source Review program. *See* Declaration of Jeffrey Holmstead. This depth of experience was precisely Desert Rock's reason for retaining Mr. Holmstead to negotiate the legal framework necessary to construct a 1500 megawatt power plant.

Lastly, Bracewell & Giuliani has a long-standing relationship with Desert Rock, as this matter has continued through its various stages since 2004. Their continued retention of the firm in ongoing litigation before the Environmental Appeals Board "evidences…satisfaction with [Bracewell & Giuliani's] work and supports the reasonableness of the fee request." *In re Enron*, 586 F.Supp.2d at 798.

### C.    Desert Rock's Claim

Desert Rock seeks recovery of fees for the following attorneys: Jeffrey Holmstead (partner); Coy Connelly (partner); Jeremiah Sheehan (in-house counsel for Desert Rock);[2] Richard Alonso (of counsel); Eduardo Perez (associate); and Benjamin Patton (associate). Since January 2009, additional fees and costs have been incurred by Desert Rock related to the negotiation of its fee claim and the preparation of this Application to the Court. Desert Rock reserves the right to submit a supplemental itemization of those amounts after the end of February 2009.

## IV.    CONCLUSION

Desert Rock is entitled to an award of attorneys' fees and litigation costs because, as evidenced by EPA's granting of the Desert Rock PSD permit subsequent to, and as a consequence of, the filing of Desert Rock's complaint, Desert Rock achieved success on the merits of its lawsuit, or in the alternative, Desert Rock's lawsuit was the catalyst that led to EPA's granting of the permit. Desert Rock seeks an amount based on the number of hours reasonably expended multiplied by a corresponding reasonable billing rate. Accordingly, Desert Rock seeks an award of attorneys' fees and litigation costs in the amount of $301,960.23, plus additional amounts related to negotiation of fees and costs and preparation of this Application.

Dated: January 26, 2009

---

[2] As reflected in the billing statement, Attachment 1 to Exhibit A, Jeremiah Sheehan participated in this litigation by contributing to drafts of the notice letter, complaint, and consent decree, as well as motions opposing intervening parties and motions to dismiss. He further conferred frequently with the attorneys as well as with co-plaintiffs regarding litigation strategy. In short, he did not merely perform "client work, such as furnishing information or documents to outside counsel," and thus his time is recoverable. *See Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 762 F.2d 272, 278 (3d Cir. 1985).

Respectfully submitted,

**BRACEWELL & GIULIANI LLP**


    /s/ M. Coy Connelly
M. Coy Connelly
TBA No. 00793541
SDTX Bar No. 19410

711 Louisiana Street, Suite 2300
Houston, Texas 77002-2770
Telephone: (713) 221-1335
Telecopier: (713) 221-2159

*Attorney-in-Charge*

OF COUNSEL:

Bracewell & Giuliani LLP
Jeffrey R. Holmstead
D.C. Bar No. 457974
*(Admitted pro hac vice)*

2000 K St., NW, Suite 500
Washington, DC 20006-1872
Telephone: (202) 828-5852
Telecopier: (202) 857-4812

ATTORNEYS FOR PLAINTIFF
DESERT ROCK ENERGY COMPANY, LLC

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with counsel for Environmental Protection Agency prior to filing the Application for Litigation Costs and Attorneys Fees and the Application is opposed.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Application for Litigation Costs and Attorneys' Fees was served upon the following counsel of record via CM-ECF and/or U.S. Mail, on the 20th day of February, 2009:

Douglas C. MacCourt
Ater Wynne LLP
222 S.W. Columbia Street, Suite 1800
Portland OR 97201-6618

Brian Doster
U.S. Environmental Protection Agency
Office of General Counsel
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

John David Gunter
Environmental Defense Section
United States Department of Justice
P.O. Box 23986
Washington, DC 20026-3986

Cristopher L. Clark Deschene
Schaff & Clark Deschene, LLC
749 Deer Trail Road
Boulder, CO 80302

/s/ M. Coy Connelly
M. Coy Connelly