**EXHIBIT B**
**DECLARATION OF JEFFREY R. HOLMSTEAD**

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DESERT ROCK ENERGY COMPANY, LLC AND THE DINÉ POWER AUTHORITY,<br>　　　　Plaintiffs<br><br>vs.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY AND STEPHEN L. JOHNSON, ADMINISTRATOR, U.S. ENVIRONMENTAL PROTECTION AGENCY,<br>　　　　Defendants | § § § § § § § § § § § § § § §　CIVIL ACTION NO. 4:08-CV-872 |

## DECLARATION OF JEFFREY R. HOLMSTEAD

1.  My name is Jeffrey Holmstead. I reside in Gaithersburg, Maryland, am over twenty-one years of age, and have never been convicted of a crime. I am competent to make this declaration, and have personal knowledge of all the facts stated in this declaration.

2.  I am a partner in Bracewell & Giuliani LLP. Bracewell & Giuliani LLP represents Desert Rock Energy Company, LLC ("Desert Rock") in the above-styled lawsuit, and I have been actively involved in the prosecution of this lawsuit. I have practiced environmental law for more than 18 years, and am familiar with the customary progression and duration of lawsuits of this nature.

3.  For more than four years, from 2001 to 2005, I served as the Assistant Administrator for the Office of Air and Radiation at U.S. Environmental Protection Agency ("EPA") in Washington DC. In this role, I was the senior official in charge of implementing the

federal Clean Air Act and worked closely with various EPA Offices that have a role in air quality related programs.

4. In early 2007, one of my partners at Bracewell approached me to ask whether I could help one of her clients with several Clean Air Act permitting issues related to the Desert Rock Energy Project, a proposed state-of-the-art 1500 megawatt coal-fired power plant to be located on Navajo tribal lands within the borders of New Mexico. Because I had no involvement with this proposed project when I was at EPA, I was able to begin advising Desert Rock at that time.

5. The initial permit application for this Project was submitted to EPA Region 9 in February 2004, and EPA Region 9 notified the permit applicant that the application was complete on May 21, 2004. Under Section 165 of the Clean Air Act (CAA), EPA is required to make a final decision on such a permit within one year of receiving a complete application; yet EPA Region 9 did not even issue a draft permit for public comment until July 2006.

6. A number of national environmental groups have publicly announced their intention to block or delay the permitting of any new coal-fired power plants in the U.S. and have engaged in aggressive litigation, public relations, and lobbying efforts to target such plants. It is my belief that these efforts have caused EPA officials to become very reluctant about issuing permits for new coal-fired plants. For example, as I tried to understand why EPA Region 9 was taking so long to issue the final permit for Desert Rock, I was informed that any such a permit had to be approved personally by the Administrator of EPA, even though Regional EPA officials normally make Clean Air Act permitting decisions.

7. Before my involvement in this matter, Desert Rock had made numerous efforts to secure a final permit for the project – meeting with officials from various government agencies, including EPA, the U.S. Fish and Wildlife Service, the U.S. National Park Service, and the Bureau of Indian Affairs. The Company agreed to certain concessions that went beyond the requirements of the Clean Air Act in the hope that such concessions would facilitate the permitting process. Among other things, the Company agreed to provide funding for other environmental projects in the vicinity of the proposed plant.

8. After I began to represent Desert Rock on this matter, I made inquiries of various EPA officials to ascertain the Agency's schedule for issuing the final permit and whether there was any further information that the Agency needed from the Company. I also helped to coordinate the advocacy efforts of other parties that have an interest in the Project, including the Dine Power Authority (DPA) and the Navajo Nation. In addition, I assisted Desert Rock in researching and analyzing various legal and technical issues related to the permit and the permitting process. Although the time that I (and others at my firm) have spent on these efforts has been substantial and costly to my client, Desert Rock is *not* requesting fees for these pre-litigation efforts in this fee petition.

9. By late 2007, Desert Rock wanted to know whether it had any legal recourse against EPA for failing to act on its permit application. I advised the Company that it would be possible to sue the Agency to force a permit decision, but that I was not aware that anyone had ever pursued such litigation. We also discussed the risks of such an action – that litigation might cause the Agency to make some form of adverse decision (either by denying the permit or imposing an unreasonable permit condition) that would further delay the Project.

10. To the best of my knowledge, the suit we filed against EPA in this case is the first case of its kind. The Administrative Procedures Act (APA) allows a court to compel EPA to act when it finds that the Agency has unreasonably delayed such action (5 U.S.C. § 706), but I do not believe that any permit applicant has tried to use this provision to force EPA to take action on a permit. Section 165 of the Clean Air Act also specifically requires EPA to make a final decision on a permit within one year of receiving a complete application, but I am not aware of any other permit applicant that has filed a lawsuit to enforce this requirement.

11. This lawsuit required legal research on novel issues of law. Among other things, we had to analyze the various responses that EPA could make to a lawsuit and the likelihood of an adverse action. We also had to research the notice requirements for both the APA and the CAA to ensure Desert Rock met those requirements.

12. This lawsuit was also complicated by the fact that we had to coordinate among other potential parties to ensure that they understood the legal and practical implications of filing a lawsuit. Among other things, this effort required the negotiation and drafting of a joint prosecution and common interest agreement.

13. Because of the involvement of EPA headquarters, EPA Region 9 (located in California) and Desert Rock (located in Houston), and the location of the proposed facility (on Navajo tribal land in New Mexico), this case also required research into various issues related to jurisdiction and venue.

14. The strong possibility of future litigation on issues relating to the PSD permit required the drafting and negotiation of a consent decree, the necessity of which has been demonstrated by Desert Rock's ongoing litigation before the Environmental Appeals Board.

Further, in having to bring this citizen suit for the issuance of its PSD permit, Desert Rock was required to expend considerable effort engaging with and opposing various intervening parties.

15. The issues raised in this lawsuit implicate far more complex and sweeping consequences for Desert Rock than is typical for a plaintiff bringing a citizen suit under the CAA, and therefore required extensive analysis of all regulatory and litigation aspects of these issues.

16. Desert Rock's attorneys' fees are reasonable for a case of this nature and were expended in the prosecution of this action.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of Feb., 2009.

Jeffrey R. Holmstead