IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DESERT ROCK ENERGY COMPANY, LLC and THE DINÉ POWER AUTHORITY, *Plaintiffs*, v. U.S. ENVIRONMENTAL PROTECTION AGENCY and STEPHEN L. JOHNSON, ADMINISTRATOR, U.S. ENVIRONMENTAL PROTECTION AGENCY, *Defendants*. | Civil Action No. H-08-872 |

**OPINION AND ORDER**

Presently before the Court are Plaintiff Diné Power Authority's Motion for Attorney Fees and Memorandum in Support (Doc. 48) and Plaintiff Desert Rock Energy Company, LLC's Application for Litigation Costs and Attorneys' Fees (Doc. 50). Upon review and consideration of these motions, the response thereto, the entire record, and the relevant legal authority, the Court finds that the motions should be granted-in-part and denied-in-part.

I.  Background and Relevant Facts

Plaintiffs Desert Rock Energy Company, LLC (Desert Rock) and The Diné Power Authority (DPA) initiated this citizen suit against Defendants U.S. Environmental Protection Agency and Stephen L. Johnson, Administrator, U.S. Environmental Protection Agency, (collectively, the EPA) to enforce the Clean Air Act (the Act). (Pls.' Compl., Doc. 1 at ¶ 1). Specifically, Plaintiffs allege that the EPA failed to perform a mandatory duty pursuant to 42 U.S.C. § 7475(c). (*Id.* at ¶ 2).

The Navajo Nation, through Plaintiff DPA, sought to improve its economic well-being by developing energy resources within its borders. (*Id.* at ¶ 2). As such, in 2003, DPA approached Desert Rock to propose and initiate the development of a new power plant on Navajo Nation land that would be operated primarily by Navajo Nation workers and powered by coal owned by the Navajo Nation and mined on its land. (*Id.*). As a result, since 2003, Plaintiffs have been working with the EPA to secure the necessary approvals to construct a state-of-the-art 1,500-megawatt coal-fired power plant, known as the Desert Rock Energy Project (the Project). (*Id.* at ¶ 3). However, under the Act, construction of the Project could not begin until the EPA issued a Prevention of Significant Deterioration (PSD) permit to ensure, *inter alia*, that the Project would not violate any air quality standards and would have the best available technology to control certain air emissions. (*Id.*).

The initial PSD permit application for the Project was submitted to the EPA in February 2004, and, in a May 21, 2004, letter, the EPA notified the applicant that the permit application was complete. (*Id.* at ¶ 6). Pursuant to section 165(c) of the Act, the EPA is required to take final action on a PSD permit within one year of receiving a complete application. 42 U.S.C. § 7475(c). Thus, the EPA should have issued the PSD permit no later than May 21, 2005. It, however, did not. (*Id.* at ¶ 8). Its failure to do so prompted Plaintiffs to file this lawsuit on March 18, 2008.

On August 1, 2008, the parties entered into a stipulation of dismissal which represented that, on July 31, 2008, the Environmental Protection Agency Region 9 issued a final permit decision within the meaning of 40 C.F.R. § 124.15(a) on the PSD permit application. (Doc. 34). Accordingly, Plaintiffs dismissed with prejudice their claims against Defendants.

Their dismissal did not, however, include their claims for costs of litigation, including attorneys' fees pursuant to 42 U.S.C. § 7604(d).  As such, Plaintiffs have filed the instant motions.

II.        Discussion

        A.        A fee award is "appropriate" under 42 U.S.C. § 7604(d)

Plaintiffs DPA and Desert Rock argue that an award of fees is "appropriate" in this case pursuant to 42 U.S.C. § 7604(d).  The EPA, however, disagrees with this contention.

        1.        Legal Standard

"The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate."  42 U.S.C. § 7604(d).

The "American Rule" is the starting point for fee awards: Even prevailing litigants are ordinarily not entitled to attorneys' fees from the losing party.  *Blue Skies Alliance v. Texas Comm'n on Environmental Quality*, 265 Fed. Appx. 203, 206 (5th Cir. 2008) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 602 (2001); *Ayeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)).  Congress has, however, abrogated that rule by statute for certain situations.  *Id.* at 206.  Although section 304(d) does not limit a fee award to "prevailing," "substantially prevailing," or "successful" parties as many other statutes do, "intuitive notions of fairness" suggest that "a successful party need not pay its unsuccessful adversary's fees."  *Id.* (citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 684-85 & nn. 3-5 (1983)).  Thus, a clear showing from Congress is required to conclude that it intended to depart from "intuitive notions of fairness."  *Id.* (citing *Sierra Club* 463 U.S. at 685).

When there is no such showing, the question becomes how much success is necessary to justify an award of fees. *Id.* In construing section 307(f) of the Act, the Supreme Court in *Sierra Club* concluded that "some degree of success on the merits by the claimant" is necessary to justify an award. *Id.* (citing *Sierra Club*, 463 U.S. at 694). The Court also looked at section 304(d) because both sections 307(f) and 304(d) share identical "whenever . . . appropriate" language. *Id.* (citing *Sierra Club*, 463 U.S. at 692). The Court, therefore, concluded that whatever general standard applies under one section shall apply under the other. *Id.* (citing *Sierra Club*, 463 U.S. at 692). Accordingly, the question posed in deciding whether to award fees is whether the plaintiff achieved "some degree of success on the merits." *Id.* (citing *Sierra Club*, 463 U.S. at 694) (footnote omitted). As the Fifth Circuit has stated, the "merits" of a case are the "elements or grounds of a claim or defense; the substantive consideration to be taken into account in deciding a case." *Id.* at 207 (quoting BLACK'S LAW DICTIONARY (8th ed. 2004) ("merits")).

2.   Analysis

Plaintiffs' claim is against the EPA and the EPA Administrator for failing to perform a non-discretionary duty. Specifically, they allege that "Defendants have failed to perform their nondiscretionary duty under section 165(c) of the Act, 42 U.S.C. § 7475(c), to either grant or deny the completed Permit Application for a permit under the PSD program for the Project not later than one year after the date of filing of such completed application." (Pls.' Compl., Doc. 1 at ¶ 30). As such, Plaintiffs' requested relief is an order directing Defendants to "immediately grant or deny the Desert Rock Energy Project PSD permit as required by the Act." (*Id.* at p. 7). The grounds for Plaintiffs' claim, and hence the merits of their suit, are the EPA's and the EPA Administrator's inaction. *See Blue Skies*, 265 Fed. Appx. at 207. The Court,

therefore, finds that Plaintiffs have achieved "some degree of success on the merits" of their claim because the filing of their complaint led to a consent decree being lodged with the Court, a subsequent stipulation of dismissal, and action on the PSD permit application by the EPA.[1]

      B.      <u>Reasonable attorneys' fees should be awarded to Plaintiffs</u>

Plaintiff Desert Rock seeks $301,960.23 in attorneys' fees and litigation costs for a total of 653.55 hours billed, as well as additional amounts related to the negotiation of fees and costs and the preparation of its application. Plaintiff DPA seeks $83,884.50 for a total of 266.2 hours billed, as well an additional $25,636.50 associated with the preparation of its fee application. The EPA argues that these amounts are unreasonable.

      1.      <u>Legal Standard</u>

In the Fifth Circuit, determining reasonable attorneys' fees involves a two-step process. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323-24 (5th Cir. 1995) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers." *Id.* at 324 (citing *Hensley*, 461 U.S. at 433). "Then the district court must multiply the reasonable hours by the reasonable hourly rates." *Id.* (citations omitted). "The product of this multiplication is the lodestar, which the district court then either accepts or adjusts upward or downward, depending on the circumstances of the case." *Id.* (citing *Brantley v. Surles*, 804 F.2d 321, 325 (5th Cir. 1986)).

In calculating the lodestar figure, the plaintiff has the burden of demonstrating that the hourly rates and the time expended are reasonable. *Hensley*, 461 U.S. at 427.

---

[1] Plaintiffs alternatively argue that they are entitled to attorneys' fees under the catalyst theory. The Court, however, finds that it need not address these arguments as it has determined that Plaintiffs are entitled to a fee award on the grounds set forth above.

The reasonable hourly rate is determined by looking at the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984). The relevant legal community is the one in which the district court sits, no matter how much of the work is done elsewhere. *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). The reasonable hourly rate for a particular community is generally established through affidavits of other attorneys practicing in that community. *See Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993); *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). Additionally, the court must consider the attorneys' regular rates in assessing the reasonableness of the hourly rate claimed. *Kellstrom*, 50 F.3d at 328.

To determine the number of hours reasonably expended, the party seeking fees must demonstrate that billing judgment was exercised. *Walker v. HUD*, 99 F.3d 761, 769 (5th Cir. 1996). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant. The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Saizan v. Delta Concrete Products Comp.*, 448 F.3d 795, 799 (5th Cir. 2006) (internal footnotes and citations omitted).

The court can adjust the lodestar by applying the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1994). The *Johnson* factors are as follows:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the

>   customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Migis v. Pearle Vision*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *id.* at 717-19). Based on one or more of the *Johnson* factors, the court may apply a multiplier to adjust the lodestar up or down if that factor or factors are not already taken into account by the lodestar itself. *Strong v. BellSouth Telecomms.*, 137 F.3d 844, 850 (5th Cir. 1998).

        2.        <u>Analysis</u>

The Court finds that Plaintiffs have met their burden of demonstrating that their hourly rates are reasonable. Plaintiff Desert Rock has provided a declaration of its attorney-in-charge, M. Coy Connelly (Connelly) and Plaintiff DPA has provided a declaration of its lead counsel, Douglas C. MacCourt (MacCourt).[2] Plaintiff Desert Rock supports its fee request by citing to a table detailing the average billing rates for Houston's large firms in 2007 that this Court relied on in its opinion from *In re Enron Corp. Sec., Derivatives & "ERISA" Litig.*, 586 F. Supp. 2d 732 (S.D. Tex. 2008). Plaintiff DPA submitted detailed information about the prevailing rates in the Portland, Oregon legal market, and, in support of its argument that the Portland rate is reasonable for the Houston market, it cited to the rates from *In re Enron*.

---

[2] Counsel for Plaintiff DPA had six individuals assigned to this matter, three partners, two associates, and one paralegal. Their respective rates for the relevant time period are as follows: (1) MacCourt, Partner - $315; (2) Michael J. (Sam) Sandmire, Partner - $375; (3) John Schultz, Partner - $315; (4) Nathan Karman, Associate - $220; (5) Jason Busch, Associate - $210; and (6) Sara Tait, Paralegal - $165. (MacCourt Decl., Doc. 48 Ex. 1 at ¶ 17).

Counsel for Plaintiff Desert Rock had six individuals assigned to this matter, two partners, one in-house counsel, one of counsel, and two associates. Their respective rates for the relevant time period are as follows: (1) Connelly, Partner - $405 ($440 in 2009); (2) Jeffrey R. Holmstead (Holmstead), Partner - $697.50 ($700 in 2009); (3) Jeremiah Sheehan, In-House Counsel for Desert Rock - $650; (4) Richard Alonso, Of Counsel - $360 ($425 in 2009); (5) Eduardo Pérez, Associate - $283 ($337.50 in 2009); and (6) Benjamin Patton, Associate - $216 ($238.50 in 2009). (Connelly Decl., Doc. 50 Ex. 1 at ¶ 5).

The Court, however, finds that Plaintiffs have failed to meet their burden of demonstrating that the time expended was reasonable. Plaintiff DPA points to the fact that it has used prevailing rates for the Portland, as opposed to Houston, legal market and that it reduced the number of hours initially submitted to Defendants for reimbursement from 471 to 266 hours. (MacCourt Decl., Doc. 48 Ex. 1 at ¶¶ 16-18). DPA contends that the hours cut were those not directly related to the litigation and those that were redundant or excessive. As an example DPA references the fact that it cut all hours it spent defending against third-party intervenors. (*Id.*).[3] Plaintiff Desert Rock provides even less evidence that it has met its burden of exercising billing judgment. In his declaration, Connolly simply states that he has "reduced the amounts being sought . . . to ensure that any unnecessary time entries have been removed" without providing any specifics. (Connolly Decl., Doc. 50 Ex. 1 at ¶ 4). Desert Rock has not deducted any of the time it spent opposing the intervention motions.

Upon review of both Plaintiffs' billing records, the Court finds several things troubling. First, with respect to DPA, of the 266.2 hours billed, 251.6 were billed by partners. (MacCourt Decl., Doc. 48 Ex. 1 at ¶ 17). Of the six individuals providing legal services on Desert Rock's behalf, two of them were partners and another was in-house counsel billing at a rate of $650 per hour. Additionally, while Holmstead may qualify as a "lion" at the environmental bar, this is not the sort of case that requires such prowess and experience in the field so as to justify almost $700 per hour in legal fees. Second, although the interests of Plaintiffs may be different from one another in the context of the construction of the Desert Rock power plant, their interests in this case were identical – they filed a joint complaint requesting an

---

[3] The Court notes, however, that DPA and Desert Rock are not entitled to attorneys' fees for time spent defending against third-party intervenors. *See Avoyelles Sportsmen's League v. Marsh*, 786 F.2d 631, 638 (5th Cir. 1986) (holding that the Clean Water Act and analogous statutes do not authorize fee awards against the government for expenses that a plaintiff incurred in portions of the litigation not made necessary by government opposition to a plaintiff's rightful claim).

order directing Defendants to "immediately grant or deny the Desert Rock Energy Project PSD permit as required by the Act." (Pls.' Compl., Doc. 1 at p. 7). As such, it seems that a great deal of the hours each firm spent on this matter were unnecessary and duplicative. Additionally, as the EPA aptly stated in its opposition papers, "the five-month lifespan of the case can be simply described: the case was filed in March and quickly stayed; a consent decree was lodged in June but never entered; Plaintiffs opposed the intervention of third parties in July; and the case was dismissed as moot in August." (Defs.' Resp., Doc. 51 at p. 12). The Court finds it extremely unreasonable that a total of 919.75 hours were spent on a case that lasted six months in which no dispositive motions were filed or court hearings were held, that involved no factual disputes, and that did not pose complex or difficult legal questions in an unsettled area of law.

In addition, the Court has reviewed the summary chart prepared by David Gunter (Gunter), a trial attorney in the Environmental Defense Section of the United States Department of Justice, that lists the settlements under 42 U.S.C. § 7604(d) from August 3, 2005, until January 26, 2009. (Gunter Decl., Doc. 51 Ex. 1-B). The Court has reviewed the PACER records, settlement agreements, and consent decrees attached to Gunter's declaration and summary chart and finds that it would not be appropriate to award more than $44,566.00 in attorneys' fees in this case. The Court uses as its benchmark an analogous case that settled shortly after the instant cause did. In *Ass'n of Irritated Residents v. Johnson*, Civil Action No. 08-227 (N.D. Cal.), the parties sued the EPA and the EPA Administrator for failing to perform nondiscretionary duties by not acting on certain state implementation plans within the time lines set forth in section 110(k)(2) of the Act, 42 U.S.C. § 7410(k)(2). (Gunter Decl., Doc. 51 Ex. 1-B). There were only twenty-eight docket entries, and the important case events included the filing of the complaint, answer, consent decree, and stipulation and order of dismissal. (*Id.*)

In view of this, as well as the fact that awards in other similar cases have been for lower amounts, the Court will start with the DPA lodestar amount and reduce it by fifty (50%) percent. The DPA lodestar amount is $83,884.50 for a total of 266.2 hours billed without taking into account additional time spent preparing the fee petition.[4] Because both Plaintiffs had identical interests and positions on the dispositive issue in this case, much of the work performed by one firm was unnecessary and duplicative of the work performed by the other firm. As a result, the Court finds that the just end result in this case is for the attorneys to take equal portions of the reduced lodestar amount, $41,942.25.[5]

III.     Conclusion

Accordingly, for the reasons set forth herein, the Court hereby

ORDERS that Plaintiff Diné Power Authority's Motion for Attorney Fees and Memorandum in Support (Doc. 48) and Plaintiff Desert Rock Energy Company, LLC's Application for Litigation Costs and Attorneys' Fees (Doc. 50) are GRANTED-IN-PART and DENIED-IN-PART. The Court further

ORDERS that Plaintiff DPA is awarded attorneys' fees in the amount of $20,971.12. The Court further

ORDERS that Plaintiff Desert Rock is awarded attorneys' fees in the amount of $20,971.12.

---

[4] Although the Court takes issue with the fact that three partners did most of the work on this seemingly non-complex case, the Court notes that DPA reduced its total billable hours by approximately 200 hours, did not factor in the amount of time spent defending against third-party intervenors, and applied Portland, as opposed to Houston, legal rates, which are considerably less expensive.

[5] The Court notes that it has taken into account Desert Rock's request for $15,548.28 in electronic research costs in arriving at this fee award amount.

SIGNED at Houston, Texas, this 29th day of September, 2009.

                                                                   MELINDA HARMON
                                       UNITED STATES DISTRICT JUDGE